## PARSONS & A. *v.* TREADWELL & A.

In the absence of a special agreement to the contrary, bankers are not required to pay interest on ordinary deposits.

The plaintiffs, being the owners of a majority of the stock in a banking corporation, agreed to sell, and the defendants agreed to purchase the same, at a price as nearly equal as might be to the just value of the stock if the bank were closed and its affairs wound up and settled on the day of said sale ; leaving the defendants to carry on the business of the bank at their own discretion.   The assets of the bank thus passing under the control of the defendants at the date of the contract were ascertained and agreed upon.   Subsequently the defendants received sums of money due to the

bank at the date of the agreement, but not included in the statement of assets. These collections were placed to the credit of the plaintiffs, but no certificates of deposit were issued to the plaintiffs, nor was notice of these collections given to them. The money was used by the bank, in the same way as that of other depositors. *Held*, that the plaintiffs were entitled to receive interest upon these sums; except in the case of certain collections made by one of the plaintiffs, delivered to the defendants, and by them placed to the same account, with regard to which the ordinary rule governing bank deposits was applied.

At the date of the foregoing agreement, the assets of the bank were subject (among other liabilities) to the redemption of bills in circulation to the amount of $72,117.00, and to the payment of depositors, $79,389.06 ; and it was stipulated that " if hereafter it shall appear, at or before the expiration of the charter of said bank and the winding up of the same, that a less amount than $79,389.06 shall be demanded and paid to persons now depositors in said bank, for or on account of their existing deposits, or if the amount of bills of said bank hereafter, and up to the time when by law the liability of the corporation to pay the same shall cease, presented for payment and actually paid by said bank, together with the bills now on hand, shall be less than the aforesaid sum of $103,-064.00 [the total amount of bills issued], then, at the time when the liability of said bank to pay such liabilities shall have ceased and ended, or within thirty days thereafter, the parties of the second part [the defendants] will pay to the parties of the first part [the plaintiffs], or their representatives, severally, their share of the difference between the amount of said deposits and of said bills in circulation as above estimated and stated, and the amounts which shall be found due and be actually paid to depositors and bill holders, in the proportion of the number of the respective shares of the parties of the first part, so that the parties of the first part will receive precisely the same proportion of said difference as if they had continued to be holders of their said several shares of said stock, with interest from the date hereof." *Held*, that the plaintiffs were not entitled to interest upon the aforesaid sums of $72,117.00 and $79,389.06; but only upon their share of the difference between the aggregate of those sums and the amount which should be ultimately found requisite for the redemption of the bills in circulation and the payment of depositors.

The defendants redeemed the bills of the bank, from time to time, as the same were presented; and they reissued some of the bills so redeemed. *Held*, that the plaintiffs were not entitled to recover any portion of the amount remaining unpaid of the bills thus reissued.

Assumpsit, by Thomas J. Parsons, Richard Jenness, and Albert R. Hatch v. Geo. L. Treadwell and others, upon a written contract

between the parties, dated the second day of May, A. D. 1864, the substance of which is as follows:

The contract recites, that the plaintiffs were the owners of stock in the Mechanics and Traders Bank, a corporation doing business in Portsmouth,—namely, the said Parsons of 124 shares, said Jenness of 886 shares, and said Hatch of 61 shares, the whole number of shares in the stock of the bank being 1,410 shares; that the plaintiffs were desirous to sell and the defendants to buy the whole or greater part of the stock of the bank, at a price as nearly equal as might be to the just value of the stock if the bank were that day closed and its affairs wound up and settled; leaving the defendants to carry on the business of the bank at their own discretion. And it was agreed that the plaintiffs would that day transfer all their stock to the defendants, and that the defendants should pay therefor fifty dollars a share, upon the following statement: The assets of the bank, which would by the contract pass that same day under the control of the defendants, were agreed to be,— notes and bills receivable, $153,330.15; deposit in the Merchants Bank, Boston, $56,213.93; deposit in the Suffolk Bank, $2,000.00; deposit in the Bank of America, N. Y., $11,310.24; bank furniture, $880.00; bills, checks, and change, $4,002.12,—$227,736.44;—subject to the payment of the following liabilities: bills issued, $103,064.00; bills on hand, $30,947.00; in circulation, $72,117.00; deposits, $79,389.06; due Rockingham Bank, $2,000.00; due stockholders after May 2d, 1864, $540.31; due said Jenness and Hatch, $282.86; dividend declared May 2d, 1864, $2,907.21,—$157,236.44: balance representing capital stock, $70,500.00,—$227,736.44;—whereupon said sum of $50 was fixed by the parties as the estimated value of said shares at that date. And in said contract the defendants agreed that if, " at or before the expiration of the charter of said bank and the winding up of the same, a less amount than $79,389.06 shall be demanded and paid to persons now depositors in said bank, for or on account of their existing deposits, or if the amount of bills of said bank, hereafter and up to the time when by law the liability of the corporation to pay the same shall cease, presented for payment and actually paid by said bank, together with the bills now on hand, shall be less than the aforesaid sum of $103,064.00, then, at the time when the liability of said bank to pay such liabilities shall have ceased and ended, or within thirty days thereafter," the defendants would pay to the plaintiffs, severally, their share of the difference, in proportion to their stock, " so that the" plaintiffs " will receive precisely the same proportion of said difference as if they had continued holders of their said several shares of said stock, with interest from the date hereof."

And in the contract it was further agreed, that if any note, debt, or demand then due to the bank, but not included in the above statement of assets, should thereafter be paid to the bank or to the officers thereof, the defendants would " forthwith pay " to the plaintiffs their proportion thereof, deducting expenses. The defendants agreed that they would cause to be paid all the liabilities of the bank above named, and indemnify the plaintiffs therefrom. And the plaintiffs agreed that if the

debts or liabilities of the bank should be found to exceed the sums above specified, they would pay their proportions thereof, according to their stock.

Of the assets named in said contract, the notes and bills receivable were so calculated that $153,330.15 above named bore interest from the date of the contract ; and the deposit in the Merchants Bank was bearing interest at four per cent. The $282.86 credited to said Jenness and Hatch was understood to be a fraction above the even sum of $50 a share for said stock, which belonged to the stockholders before the date of the contract, and of which the plaintiffs were entitled to their share.

In accordance with said contract, the plaintiffs on the same day transferred to the defendants their stock, and received $50 a share for the same. The defendants thereupon took possession of the bank and its °assets, and were elected directors thereof. The charter of the bank expired June 27th, 1865, and the defendants finally wound up the affairs of the same at the time limited by the statute, namely, June 27th, 1869.

In the mean time, and within a few months after the date of the contract, the defendants collected and received sundry sums of money, due to the bank at the date of the agreement, but not included in the above estimate, and placed the same to the credit of said Jenness and Hatch. No certificate of deposit was issued to said Jenness and Hatch for these or the sum named among said liabilities, nor was any notice of said collections given to the plaintiffs. A similar sum was collected by Mr. Jenness and delivered to the defendants, who placed the same to the same account ; but the other plaintiffs had no notice of this transaction. All these sums stood upon the books of the bank as a deposit account, and the money was used by the bank as was the money of other depositors. The plaintiffs claim interest on all these sums from the time they were collected and paid into the hands of the defendants. The defendants admit their liability to pay the plaintiffs' proportion of the above sums, and deny that they are bound to pay any interest.

The defendants redeemed the bills of the bank named in the contract, from time to time, as the same were presented ; and they reissued part of the bills so redeemed. On the 27th of June, 1869, part of the bills named in the contract, and part of the bills reissued, remained not presented, redeemed, or paid ; and the same are supposed to be lost by the holders. The plaintiffs claim to recover of the defendants under the contract, (1) for the bills remaining not redeemed, including those reissued, which were never returned, with interest from May 2, A. D. 1864. (2) Interest on the balance of the sum of $72,117.00 named in the contract, left in the hands of the defendants to redeem the bills in circulation, from the date of the contract until the same was actually paid out in the redemption of bills. The defendants admit their liability to pay the plaintiffs' share of the bills never redeemed, with interest ; except those reissued and never afterwards

redeemed; but deny their obligation to pay any other interest claimed by the plaintiffs.

The deposits named in the contract were from time to time paid by the defendants as called for, except the sum of about $256, the larger part of which is due to said Hatch as clerk of the U. S court, and all which is still due to depositors living in Portsmouth. The plaintiffs claim interest on the sum of $79,389.06 left at the date of the contract in the hands of the defendants to pay depositors, from that date until actually paid out. The defendants claim that the said deposits still belong to the depositors, and deny any liability to the plaintiffs on account thereof, or for interest on the sum left to redeem the same.

About the first of July, 1869, the plaintiffs requested the defendants to render an account and to pay the sums due them under the said contract; and the defendants did, on the 28th of July, 1869, deliver to the plaintiffs a statement of the money they admit to be due to them; but the same was not satisfactory to the plaintiffs.

The plaintiffs make their claims severally under the contract; but to save cost and expense, the parties agree that the plaintiffs may recover in this action whatever they would be entitled to recover in separate actions.

The amount due to the plaintiffs is hereafter to be ascertained, according to the opinion of the court upon the foregoing case.

*Hatch*, for the plaintiffs.

I. The plaintiffs are entitled to recover of defendants their shares of the sum named in the contract as due to Jenness and Hatch, and of the other sums collected by the defendants or paid to them as stated in the agreed case, *with interest.*

The plaintiffs claim interest, because (1) the money was actually used by the defendants, or by the bank with which they were identical; and the money earned and brought interest, which the defendants have in their hands. (2) The defendants were, under the contract, trustees of the money, and were bound to deliver to the plaintiffs their shares of it " forthwith" after receiving the same; yet, though the whole of this money was received nearly six years ago, the defendants never divided it, but retained it in their own possession, and employed it to their own use, without notice to the plaintiffs. The defendants placed it in their bank, nominally to the credit of Jenness and Hatch; but the transaction in no respect resembled an ordinary bank deposit account, in which the fund may be withdrawn by the depositor at pleasure. Neither Jenness and Hatch nor the plaintiffs had any certificate or other evidence of deposit, or any right to take the money, nor any notice that the defendants had the money, or what disposition they had made of it. Mr. Jenness did collect and pay to them one small sum; but whatever notice this fact may imply to him, it does not extend to affect the other plaintiffs.

*Dodge* v. *Perkins*, 9 Pick. 386; *Knowlton* v. *Bradley*, 17 N. H. 458; *Griswold* v. *Chandler*, 5 N. H. 492; *Wendell* v. *French*, 19 N. H. 213;

*Stark* v. *Gamble*, 43 N. H. 465; *Peirce* v. *Rowe*, 1 N. H. 182; *Mahurin* v. *Bickford*, 6 N. H. 571; *Hollister* v. *Barkley*, 11 N. H. 511; *Boynton* v. *Dyer*, 18 Pick. 1; *Schieffelin* v. *Stewart*, 1 Johns. Ch. 620; *Greenly* v. *Hopkins*, 10 Wend. 96.

II. The plaintiffs are entitled to their share of the interest upon the sums left in the hands of defendants to redeem the circulation and to pay the deposits of the bank from the date of the contract up to this time, or until the money was actually paid out.

(1) Such is the literal meaning of the contract. The expressions in the contract, " if it shall appear, *at or before* the expiration of the charter of the bank," &c., " that a less amount than" the sum there specified " shall be demanded and paid to persons now depositors;" and " if the amount of bills of said bank, *hereafter, and up to the time* when by law the liability of the corporation to pay the same shall cease," &c., admit of no other construction. Unless these phrases have the effect claimed by the plaintiffs, no meaning can be attached to them.

It does appear, and did from day to day appear upon the books of the bank " before" and up to " the expiration of the charter," that balances of deposits remained unpaid; and it does and did appear in the same manner " after" the date of the contract " and up to the time when the liability of the corporation to pay the same ceased," that large amounts in bills in circulation remained not presented nor paid. The literal promise of the defendants is to pay to the plaintiffs their proportions of those sums, "with interest *from the date of the contract.*" Defendants have from time to time paid part of the principal of these sums, with precisely the same effect as if paid to the plaintiffs, but the interest remains unpaid and due to the plaintiffs.

(2) The intention of the parties was to give to the plaintiffs the exact value of their shares at the date of the contract. The instrument is drawn with some nicety to accomplish this object. The expression, that the plaintiffs are to " receive precisely the same proportion of the difference" between the assets delivered to the defendants and the sums they might expend in the payment of liabilities " as if they had continued to be holders of their several shares of said stock," indicates exactly what is implied by the whole tenor of the contract.

But the delivery to the defendants of more than $150,000 in securities bearing interest, which in the ordinary course of business they would not be required to pay out to depositors and bill holders for a long space of time, would be an act not consistent with this intention unless an interest account was to be rendered. It is plain that if the plaintiffs had retained the securities and assumed the payment of the bills and deposits, they would have enjoyed the interest upon the fund until called for to meet these liabilities. It is notorious that the business of paying depositors and redeeming the bills would have been readily undertaken, without charge, by any respectable bank or broker, for the sake of the incidental advantages to be derived from it. Not the least of these advantages was the high rate of interest, historically known to have been far above six per cent., which might have been

received, and which the defendants did in fact receive, from the use of those funds.

That the parties had all these facts distinctly in mind when they made the contract, is evident from the language of the instrument.

There is no indication that the plaintiffs intended to surrender so valuable an advantage without compensation; and the whole spirit of the contract shows that they did not.

(3) Equity and natural justice favor the plaintiffs' construction of the contract. The defendants have received of the plaintiffs value in the use and interest of the plaintiffs' money, some of it for a long time; and it is reasonable that they should account to the plaintiffs for what they have received, and return what rightfully belongs to them. The allowance of the plaintiffs' claim will take nothing from the defendants which they have ever paid for; and it will simply restore to the plaintiffs what, without the contract, they would certainly have had.

III. The contract plainly requires the defendants to return to the plaintiffs their share of the amount of the deposits never " demanded and paid," with interest from the date of the contract. It is immaterial that the money not called for still belongs to the depositors. It does so, and the plaintiffs recognize their obligation to pay the money to the depositors when " demanded." The plaintiffs have an interest in seeing it paid, and the defendants have not paid it, and are no longer under obligation to do so to the depositors. The obligation of defendants to pay interest is not diminished by the fact that part of the deposits now unpaid is due to one of the plaintiffs, who has relied on the contract as securing to him both the principal of his deposit and interest thereon.

IV. The defendants assert that they reissued some of the bills of the bank, after the date of the contract, and that part of this reissue has never been redeemed. The plaintiffs claim to recover upon the amount so remaining unpaid, because

(1) Such is the letter of the contract.

(2) By reissuing the bills, bearing the names of the former officers of the bank, of which Mr. Jenness was president, they availed themselves of the credit of the plaintiffs.

(3) They so mingled their own goods (the bills redeemed) with those of the plaintiffs (the bills not redeemed), that it has become difficult, if not impossible, to distinguish them.

V. All the above sums were demanded in July, 1869. A rest should be made at that date, and interest allowed from that time for all then due. *McIlvaine* v. *Wilkins*, 12 N. H. 474; *Livermore* v. *Rand*, 26 N. H. 85; *Nat. Lancers* v. *Lovering*, 30 N. H. 516.

*Rollins*, for the defendants.

I. Plaintiffs claim interest on a small sum left on deposit, and some much smaller ones coming in to the same account. They are not entitled to it, because

1. Banks do not pay interest on deposits unless there is a special

agreement.    2. There is no agreement to pay interest, and the contract "drawn [it is said] with nicety" contains none, although the sum left on deposit is expressly mentioned.    3. The sum was left on deposit because too small to be divided by the number of shares ; and the other sums were much smaller, and of course for the same reason could not be divided.    4. The largest item was that collected and deposited by plaintiff Jenness.    5. Defendants are not trustees, and have no occasion to dispute the doctrine, to which many authorities have been cited by the plaintiffs, that guardians and administrators must pay interest in certain cases.    6. Plaintiffs had the right to take the money at any time, and knew that the largest part of it was there, and that it was treated as any ordinary deposit.

II. They claim money deposited there, which the depositors have not as yet seen fit to withdraw.    To this we reply : 1. The parties who entered into the contract had no right to convey away the property of other people, and the court will construe the contract to mean what they had a right to do, and what the parties must have intended by this clause,— *i. e.*, if it should be found that more money was credited to depositors than belonged to them, plaintiffs should have their share ; and the provision that plaintiffs should make the amount good if deposits overran the amount stated in the account, is evidence that this is the true construction.    There is no pretence of any such error here. 2. Plaintiffs are not liable to depositors for these sums in any way. 3. One of the plaintiffs is the depositor to whose credit nearly all the money stands.    Has he left it there in the hope of exacting a double payment from these defendants ? or was it for the purpose of transferring it from his account as clerk to his own pocket?

III. The principal claim of the plaintiffs is that set up as No. 2 in the third paragraph of the case, and founded on the words "interest from the date hereof."

We claim that this interest is only on the amount of bills never redeemed.    1. The plain meaning of the words sustains our position ; "their proportion of said difference, with interest thereon."    The paragraph shows that the difference meant is the difference between the amount of bills issued and those redeemed.    It is true, plaintiffs claim that this is modified by the words "as if they had continued holders of the stock ;" but these words clearly refer to the proportion of difference, and the defendants admit that they are entitled to that.    2. The defendants' view is confirmed by the second paragraph of the agreement, which shows that a sale was to be made of the stock "at a price as nearly equal as may be to the just value of said stock if the said bank were this day closed, and the affairs thereof wound up and settled."    What was the just value of the stock at that time ?    We reply, the amount of the assets less the liabilities, which was exactly fifty dollars.    There was also the amount which the liabilities had been diminished by the loss of bills, and if that could have been ascertained on that day and paid, the plaintiffs would have received all they claimed.    As it could not be ascertained at that time, the contract provided for interest on the amount

until it could be ascertained.    3.  Justice and equity favor the construction of the defendants.    Part of the assets placed in their hands bore no interest, part bore four per cent. and part six per cent., expiring at maturity of the notes, all within four months from the date.

How could the plaintiffs expect to receive 6 per cent. on the whole? If they did they would receive all that they could have done if they had not been paid for their stock, besides being exempt from the taxes and other expenses, the risk of loss on the assets, and the responsibility of managing.   What then did the plaintiffs, under their construction, part with in exchange for the $50 a share?   Nothing but the expenses, responsibility, and risk of loss.    4.  If plaintiffs' construction was correct, would not the contract drawn with such "nicety" have read, interest on the $72,117 until used in the redemption of bills, and interest on that part not so used until the expiration of the charter?   Under their construction this interest is the most important part, and yet is treated as a mere incident.   Great stress is laid by plaintiffs on the words " at or before the expiration of the charter," " hereafter and up to the time."   These words are necessary in case the affairs of the bank should be wound up before the expiration of the charter.   The claim for interest on money left to pay deposits seems to be abandoned by plaintiffs, and certainly is open to all the foregoing objections, and to the further one that from the date of the contract they ceased to be deposits with the old organization, and became deposits with the new one.   The plaintiffs in their brief assert that other banks would have done this, but so far as the defendants are informed this is not the fact ; and we deny this, as well as sundry other assertions contained in said brief, which are contrary to the fact.   We do not deem it necessary to specify them, but only to say that we admit nothing except what appears in the case agreed.

IV.  Plaintiffs cannot recover the amount of reissued bills which have been lost.    1.  Because they have been redeemed according to the contract.   When reissued, they went out in the regular course of business, and it is the same as if new bills had been issued.    2.  The credit of the Mechanics and Traders Bank, of which the defendants controlled a majority of the stock, was used, and not the credit of the plaintiffs. The name of only one of the plaintiffs was on the bills, he having been president of the bank, and signing them as such.    3.  They were not mingled, but can be distinguished.

V.  Plaintiffs cannot compound the interest by making a rest in July, 1869.   In the cases cited the debt was not on interest.

FOSTER, J.   I.  The plaintiffs claim to recover interest on the sum of $282.86, the same being that portion of the liabilities of the bank specifically enumerated in the contract as due to Jenness and Hatch at the date of the contract.   This sum stood upon the books of the bank as a deposit account, and the money was used by the bank, as in the case of the money of other depositors.

At the date of the contract the situation of this sum of money was known and understood by all the parties, and it was specifically named

in the contract among the liabilities of the bank.   No agreement was incorporated in the contract, nor is any extraneous agreement suggested whereby this liability is placed upon any other footing than that of an ordinary deposit, subject at any time to the draft of the depositors. We suppose it to be well understood that, unless by reason of some special agreement, banks do not pay interest on ordinary deposits.   As soon as the money deposited is entered to the credit of the depositor, it is subject to his call or order at any time.   Such deposits then become immediately the property of the bank, and are mingled with the other funds and property of the bank.   Morse on Banks and Banking - 26, and notes.   It was at the option of the depositors to withdraw the deposit at any time, or to stipulate for interest if they should allow it to remain ; and the fact that they have made no express stipulation contrary to the usage and custom of banks, either before or at the time of the execution of the contract, is a very clear indication that no unusual provision was contemplated by either party with relation to this deposit.   We are therefore of the opinion that this claim for interest should be disallowed.

II. With regard to the other collections of money due to the bank at the date of the contract, but not included in the estimate of assets incorporated in the contract, a different rule prevails.   By the terms of the contract, the plaintiffs' proportion of these collections, deducting expenses, was to be paid by the defendants " forthwith."   They were paid to the defendants without the knowledge of the plaintiffs (except in the case of the amount thus paid by Jenness), and were placed to the credit of the plaintiffs as an ordinary deposit.   But the defendants could not make the plaintiffs *involuntary* depositors, so to speak, in this manner.   It was their duty, since by the terms of the contract this money was to be paid " forthwith," to notify the plaintiffs of its receipt, in order that they might avail themselves of the money or the use of it. Instead of this, they mingled it with their common funds, and derived a profit from its use for which they are liable as trustees, like administrators, guardians, and other agents, to account by payment of the usual rate of interest accruing and received by them.   *Dodge* v. *Perkins*, 9 Pick. 368 ; *Griswold* v. *Chandler*, 5 N. H. 497 ; *Stearns* v. *Brown*, 1 Pick. 531 ; *Wendell* v. *French*, 19 N. H. 213 ; *Stark* v. *Gamble*, 43 N. H. 468 ; *Peirce* v. *Rowe*, 1 N. H. 182.

III. But these considerations do not apply to the sums of money, whatever they may be, collected by Jenness himself and by him paid to the defendants, with regard to which, he having full notice and opportunity to demand and control his proportion, the ordinary rule governing bank deposits must apply.

IV. The plaintiffs also claim to recover of the defendants their respective shares of the interest accrued upon the sums of $72,117.00 left in the hands of the defendants to redeem the circulation, and of $79,389.06 left in their hands to pay depositors, from the date of the contract up to the time when the money was actually paid out for these purposes; and also to recover their proportion of the amount of the bills remaining not redeemed on the 27th June, 1869, at which time

the defendants finally wound up the affairs of the bank, including the bills reissued, which were never returned.

The defendants admit their liability to pay the plaintiffs' share of the bills never redeemed, with interest, except those reissued and not subsequently redeemed, but deny their obligation to pay any other interest claimed by the plaintiffs.

The claim of the plaintiffs is founded upon the following provision of the contract: "And the parties of the second part do further promise and agree, to and with the parties of the first part, that if hereafter it shall appear, at or before the expiration of the charter of said bank and the winding up of the same, that a less amount than $79,389.06 shall be demanded and paid to persons now depositors in said bank, for or on account of their existing deposits, or if the amount of bills of said bank hereafter, and up to the time when by law the liability of the corporation to pay the same shall cease, presented for payment and actually paid by said bank, together with the bills now on hand, shall be less than the aforesaid sum of $103,064.00 [the total amount of bills issued], then, at the time when the liability of said bank to pay such liabilities shall have ceased and ended, or within thirty days thereafter, the parties of the second part will pay to the parties of the first part, or their representatives severally, their share of the difference between the amount of said deposits and of said bills in circulation as above estimated and stated, and the amounts which shall be found due and be actually paid to depositors and bill holders, in the proportion of the number of the respective shares of the parties of the first part, so that the parties of the first part will receive precisely the same proportion of said difference as if they had continued to be holders of their said several shares of said stock, with interest from the date hereof."

The plaintiffs, on the 2d May, 1864, undertook to sell out all their interest in the "Mechanics and Traders Bank," and to retire from all participation in the management of the affairs of the concern, and to dispose of and relinquish all their interest in its subsequent profits or losses.

The precise value of the interests which they desired thus to dispose of was not then capable of ascertainment, on account of the uncertainty of the amount which would be finally due to bill holders and depositors, and which could only be ascertained upon and at the time of the final closing up of all the accounts and affairs of the institution. The object of the written contract then was, as expressed in its preamble, to enable the plaintiffs to sell and the defendants to purchase the capital stock of the plaintiffs "at a price as nearly equal as may be to the just value of said stock if the said bank were this day closed and the affairs thereof wound up and settled, leaving the party of the second part [the defendants] henceforth to carry on and manage said bank at their own discretion."

This preamble is the key to the interpretation of the whole contract. And applying this test to the interpretation of the clause in the agreement now under consideration, we regard the expressions—"if it shall

appear, at or before the expiration of the charter of the bank,". &c., " that a less amount than $79,389.06 shall be demanded and paid to persons now depositors;" and " if the amount of bills of said bank, hereafter and up to the time when by law the liability of the corporation to pay the same shall cease" shall be less than the specified sum, " then at the time when the liability of said bank to pay such liabilities shall have ceased and ended," &c., the defendants will pay,—as meaning this (in connection with the remainder of the clause, which need not be repeated),—that *whenever*, either at the expiration of the time limited by the charter for winding up the affairs of the bank, or at any earlier period that should be ascertained, which at the date of the contract was incapable of ascertainment, *then* the plaintiffs should be entitled to "their share of the difference," &c., just as if that share had been ascertained on the 2d May, 1864, the date of the contract and sale, with interest upon that sum from that time.

This whole provision is plainly inserted solely because it was impossible to ascertain, on the 2d May, 1864, what was the true value of the plaintiffs' stock. If it had been capable of ascertainment, it is quite clear that instead of this provision the contract would have provided that the defendants should pay a certain specified sum, *being* the plaintiffs' share of " the difference between the amount of said deposits and of said bills," and the amounts which *are now* (not " shall be" " found"), " due to depositors and bill holders," with interest from the date of the contract, upon a sum then ascertained and specified.

Such is the amount to which the plaintiffs *were* entitled at the date of the contract. The only difficulty was, that the amount was not and could not be then ascertained. Being ascertained subsequently, the plaintiffs, by the reception of interest from the 2d May, 1864, upon that subsequently ascertained sum, do, according to the terms of the contract, "receive precisely the same proportion *of said difference* as if they had continued to be holders of their said several shares of said stock."

The language of this part of the contract, without any aid, even, from the key of interpretation provided by the preamble, would seem to be too clear for any serious questioning. It is not interest upon the gross amount of all the sums remaining in the defendants hands, subject to the call of bill holders and depositors, that the plaintiffs are entitled to demand, but their share of the *difference* between the amount of deposits and bills in circulation, and the amount which they would ultimately be required to pay in order to discharge the liabilities of the bank, on account thereof; and the words " as if they had continued holders of the stock" have reference, by the express terms of the contract, to the " *difference*," and not the gross amount.

The plaintiffs suggest that equity requires the adoption of their construction of the contract in this particular. We do not so regard the matter. The plaintiffs complain that they have not realized all the profits which they might have gained from the business of the bank if they had not sold out. But we cannot lose sight of the fact

that they *did* sell out on the 2d May, 1864, and the only reason that everything was not then concluded and paid between the parties was the difficulty about the unascertained value, not at a future time, but then, of the plaintiffs' stock ; that the object of all parties was to wind up the plaintiffs' connection with and interest in the bank *then*, upon a basis then existing, definite and certain, but unascertained. When the plaintiffs sold their stock and relinquished their part in the management of the concerns of the bank, they parted likewise with their interest in all its subsequent profits and losses. It could not have been contemplated by the purchasers that, as a result of the arrangement on the 2nd May, 1864, the plaintiffs were to be relieved of all participation thenceforth in the expenses, responsibility, risks, and labor of the management of the concern, while the purchasers were to assume all those risks, expenses, labors, and responsibilities, and also divide all the profits with the plaintiffs. The plaintiffs, by the contract, were to receive *the full value of the stock* and the interest which they sold, and it is to be presumed that that value was ascertained with reference to the then existing and not the subsequent fortune or misfortune, loss or profit, of the concern from which the plaintiffs withdrew. A party who, without being deceived, has sold out his interest in a partnership or other business relation, should not be heard to lament that he has lost the profits which his successors have made.

This seems to us the obvious and natural view of the rights, obligations, and general situation of the parties under the contract. If the plaintiffs' construction had been intended, the contract " drawn with some nicety " (as the plaintiffs contend), should have more clearly expressed the plaintiffs' understanding of its provisions.

V. The plaintiffs also claim to recover their proportion of " the sum of about $256.00—the larger part of which is due to said Hatch as clerk of the U. S. Court, and all which is still due to depositors living in Portsmouth."

This claim, with interest, the plaintiffs are entitled to recover. The legal liability of the defendants to the original depositors of this money having ceased by the limitation of four years from the expiration of their charter, as provided by § 3, chap. 37 of the Act of June 28, 1843, this sum is a portion of the profits contemplated by the parties in their contract, to be ascertained upon the final winding up of the affairs of the bank, and as such is due to these plaintiffs under the contract.

VI. The plaintiffs claim to recover their proportion of the amount remaining unpaid of the bills reissued by the defendants, after their first redemption, with interest.

This claim cannot be sustained. These bills, being once redeemed, became the property of the defendants, and were reissued by them as the property and upon the credit of the bank, in the ordinary course of its business. So far, and so far only, as they can be distinguished from new issues with which they may have been mingled by the defendants, they are not subject to the plaintiffs' claim.

VII. It appears from the case that " about the first of July, 1869,"

the plaintiffs made a demand on the defendants of payment of the sums due the plaintiffs under the contract, and they claim interest from that date upon all sums then due.

Upon such sums as the plaintiffs are entitled to recover, in accordance with the foregoing considerations, interest should be computed and allowed from the date of their demand. *McIlvaine* v. *Wilkins*, 12 N. H. 474, and cases there cited.

An auditor may be appointed to ascertain the amount due the several plaintiffs, upon the basis of this decision.